James R. Batchelder (CSB # 136347)
Christopher M. Bonny (CSB # 280554)
**ROPES & GRAY LLP**
1900 University Ave. Sixth Floor
East Palo Alto, CA 94303-2284
Tel: (650) 617-4000
Fax: (650) 617-4090
james.batchelder@ropesgray.com
christopher.bonny@ropesgray.com

Matthew J. Rizzolo (*pro hac vice*)
Kathryn C. Thornton (*pro hac vice*)
**ROPES & GRAY LLP**
2099 Pennsylvania Ave. NW
Washington, DC 20006-6807
Tel: (202) 508-4600
Fax: (202) 508-4650
matthew.rizzolo@ropesgray.com
kathryn.thornton@ropesgray.com

Evan Gourvitz (*pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: (212) 596-9000
Fax: (212) 596-9090
evan.gourvitz@ropesgray.com

Abirami Gnanadesigan (CSB # 263375)
Brian H. Newman (CSB # 205373)
**DYKEMA GOSSETT LLP**
333 South Grand Ave
Suite 2100
Los Angeles, CA 90071
Tel.: (213) 457-1800
Fax: (213) 457-1850
agnanadesigan@dykema.com
bnewman@dykema.com

Attorneys for Plaintiff
TERADYNE, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERADYNE, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ASTRONICS TEST SYSTEMS, INC.<br>and ASTRONICS CORPORATION<br><br>　　　　Defendants. | Case No. 2:20-cv-02713 GW(SHKx)<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Teradyne, Inc. ("Teradyne"), by its undersigned attorneys, brings this First Amended Complaint against Defendants Astronics Test Systems, Inc. and Astronics Corporation (collectively, "Defendants" or "Astronics"), and hereby

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

alleges, on personal knowledge as to Teradyne's own acts, and on information and belief as to Defendants and others based on investigation, as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement (35 U.S.C. § 271 *et seq.*), copyright infringement (35 U.S.C. § 101 *et seq.*), unfair competition (Cal. Bus. & Prof. Code § 17200 *et seq.*), and inducing breach of contract, interference with contractual relations, and interference with prospective economic advantage under California common law. More particularly, this case arises out of Defendants' unauthorized copying and use of Teradyne's patented invention and copyrighted software works, interference with Teradyne's contracts and economic relationships, and related unlawful and fraudulent conduct.

2. Plaintiff Teradyne is a leading supplier of automated test equipment used to test semiconductors, wireless products, data storage, and complex electronic systems for consumer, communications, industrial, and government customers.

3. Defendant Astronics Corporation describes itself as a company that supplies products and services to aerospace and defense industries, and designs, builds, and supplies its products through its wholly owned subsidiaries, including Astronics Test Systems, Inc.

4. Defendant Astronics Test Systems, Inc. describes itself as a company that offers automatic test equipment to electronics manufacturers in the aerospace, military, semiconductor, medical, and mass transit industries.

5. Teradyne and Defendants are direct competitors in the electronics and automation testing industry.

## THE PARTIES

6. Teradyne is a Massachusetts corporation with its principal place of business at 600 Riverpark Drive, North Reading, Massachusetts 01864.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

7.      Astronics Corporation is a corporation organized under the laws of the State of New York with its principal place of business located at 130 Commerce Way, East Aurora, New York 14052.

8.      Astronics Test Systems, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business located at 4 Goodyear, Irvine, California 92618.  On information and belief, Astronics Test Systems, Inc. is a wholly owned subsidiary and alter ego and/or agent of Astronics Corporation.

## JURISDICTION AND VENUE

9.      This action involves federal claims arising under the United States Patent Act, 35 U.S.C. § 101, *et seq.*, and the United States Copyright Act, 17 U.S.C. § 101 *et seq.*, as well as pendent state law claims.  This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

10.     This Court has personal jurisdiction over Astronics Test Systems, Inc. ("ATS"), at least because: (i) ATS's principal place of business is located in this judicial district; (ii)  ATS has committed acts of copyright and patent infringement and/or contributed to and/or induced acts of copyright infringement and patent infringement by others in this judicial district, and/or has committed acts of inducing breach of contract, interference with contractual relations, interference with prospective economic advantage, and unfair competition in this judicial district, and continues to do so; (iii) ATS regularly does or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in this judicial district; and (iv) ATS has purposefully established substantial, systematic, and continuous contacts within this judicial district and expects or reasonably expects to be subjected to this Court's jurisdiction.

11.     This Court has personal jurisdiction over Astronics Corporation at least because Astronics Corporation has committed acts of copyright and patent

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

infringement and/or contributed to and/or induced acts of copyright infringement and patent infringement by others in this judicial district, and/or has committed acts of inducing breach of contract, interference with contractual relations, interference with prospective economic advantage, and unfair competition in this judicial district, and continues to do so.  For example, on information and belief, Astronics Corporation is involved in and collaborates with its subsidiary ATS in the marketing, sale, and support of automated test systems, including the infringing PXIe and VXI series products and software that supports those products, for customers located in this judicial district.  In its public regulatory filings, Astronics Corporation  explains that "Astronics Corporation ('Astronics' or the 'Company') is a leading supplier of advanced technologies and products … includ[ing] ... automated test systems."  Ex.A (Astronics Corp. 2019 Form 10-K) at 5.  Moreover, the Astronics Corporation website at astronics.com advertises "Automated Test Equipment" and "Test Instruments" (Exs. B (Products & Solutions From Astronics on astronics.com) and C (Test Instruments on astronics.com)) and provides products sales and support information and information for those same product categories (Ex. D (Contact Us on astronics.com)).  On information and belief, these webpages are owned and operated by Astronics Corporation for the express purpose of marketing, selling, and supporting automated test systems, including the infringing PXIe and VXI series products and software that supports those products, including for customers located in this judicial district, including customers with existing contracts and business relationships with Teradyne.  In addition, on information and belief, the management team of Astronics Corporation, including Mr. James Mulato and Mr. Peter Gundermann, direct, control, and/or collaborate with ATS regarding certain activities of ATS relating to the marketing and sale of automated test equipment, including in this judicial district.  At minimum, Astronics Corporation advertises automated test equipment products to customers in this judicial district, and through the Astronics Corporation website directs its subsidiary ATS to sell to

and support those customers.  Exs. B (Products & Solutions From Astronics on astronics.com) and D (Contact Us on astronics.com).  Moreover, on information and belief, the Astronics Test Systems webpage on the Astronics Corporation website is owned and operated by Astronics Corporation, for example as shown by the copyright notification on the page, and is used to market and sell automated test equipment, including in this judicial district.  Ex. E (Astronics Test Systems on astronics.com).  Thus, Astronics Corporation has committed intentional acts that are expressly aimed at California.  Moreover, Astronics Corporation caused harm that it knew was likely to be suffered in California because it targeted Teradyne customers in California and knew that Teradyne has offices in California.  The claims at issue in this case arise out of or relate to the above-described conduct.  For example, the patent infringement claim relates to the sale of automated test systems including the PXIe and VXI series products, the copyright infringement claim relates to certain copyrightable works that were copied to develop and support those automated test systems, and the state law claims relate to, for example, designing those automated test systems to be compatible with Teradyne software and supporting their use with Teradyne software.

12.     In addition, this Court has personal jurisdiction over Astronics Corporation at least because Astronics Corporation, through its wholly owned subsidiary and alter ego and/or agent ATS, has committed acts of copyright and patent infringement and/or contributed to and/or induced acts of copyright infringement and patent infringement by others in this judicial district, and/or has committed acts of inducing breach of contract, interference with contractual relations, interference with prospective economic advantage, and unfair competition in this judicial district, and continues to do so.  For example, ATS uses and/or has used its employees and facilities in this judicial district to design, build, test, sell, and support automated test systems, including the infringing PXIe and VXI series products and software that supports those products, including for customers located

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  in this judicial district, including customers with existing contracts and business

2  relationships with Teradyne.  Thus, ATS has committed intentional acts that are

3  expressly aimed at California.  Moreover, ATS caused harm that it knew was likely

4  to be suffered in California because it targeted Teradyne customers in California and

5  knew that Teradyne has offices in California.  The claims at issue in this case arise

6  out of or relate to the above-described conduct.  For example, the patent

7  infringement claim relates to the sale of automated test systems including the PXIe

8  and VXI series products, the copyright infringement claim relates to certain

9  copyrightable works that were copied to develop and support those automated test

10  systems, and the state law claims relate to, for example, designing those automated

11  test systems to be compatible with Teradyne software and supporting their use with

12  Teradyne software.

13       13.     The above-described contacts of ATS are properly imputed to

14  Astronics Corporation because Astronics Corporation has the right to substantially

15  control ATS's activities and ATS is therefore the general agent of Astronics

16  Corporation.  For example, a February 13, 2019 Asset Purchase Agreement between

17  Astronics Corporation, ATS, and Advantest Test Solution, Inc. ("Asset Purchase

18  Agreement") shows that Astronics Corporation controls which business its

19  Affiliates, including ATS, engages in and which employees they hire.  Ex. F

20  (Amended and Restated Asset Purchase Agreement) §6.7 ("Parent shall not, and

21  ***shall not permit*** any of its Affiliates to … engage in or assist others in engaging in

22  the Restricted Business"; "Parent shall not, and ***shall not permit*** any of its Affiliates

23  to … hire or solicit any Transferred Business Employee").  On information and

24  belief, Astronics Corporation either already substantially controlled ATS's activities

25  prior to entering into the Asset Purchase Agreement, or upon entering into the

26  agreement has taken active steps to substantially control ATS's activities, including

27  its business and hiring decisions, in compliance with its obligations under the

28  agreement.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

14.     The above-described contacts of ATS are also properly imputed to Astronics Corporation because ATS is the alter ego of Astronics Corporation as a result of the strong unity of interest and ownership between the two companies. Indeed, as described above and further below, Astronics Corporation and ATS hold themselves out as a unitary entity for purposes of marketing, selling, and supporting automated test systems, including the infringing PXIe and VXI series products, and related software.

15.     On information and belief, Astronics Corporation directs and manages a single, integrated business through exclusive control over its subsidiaries, notwithstanding the existence of multiple legal corporations.  For example, Astronics Corporation: (i) holds itself out as a supplier of automated test systems— *i.e.*, the products at issue in this case (Ex. A (Astronics Corp. 2019 Form 10-K) at 5 ("Astronics Corporation ('Astronics' or the 'Company') is a leading supplier of advanced technologies and products … includ[ing] ... automated test systems."); Ex. G (PXI Digital Test Instrument on astronics.com); Ex. H (VXI Digital Test Instrument on astronics.com)); (ii) exercises control over the day-to-day operations of ATS including by directing which business ATS engages in and which employees it hires (Ex. F (Amended and Restated Asset Purchase Agreement) §6.7); (iii) shares at least half of its management team with ATS, including Executive Vice President of Astronics Corp. and President of ATS, Mr. James Mulato, who has lived and worked in this district (Ex. I (Management Team on astronics.com); Ex. A (Astronics Corp. 2019 Form 10-K) at 73; Ex. J (James Mulato Profile on LinkedIn)), President and CEO of Astronics Corp. and board member for ATS, Mr. Peter Gundermann (Ex. I (Management Team on astronics.com); Dkt. No. 38 ¶3, n.2), and Executive Vice President—Finance of Astronics Corp. and Secretary and Treasurer for ATS, Mr. David Burney (Ex. I (Management Team on astronics.com); Ex. F (Amended and Restated Asset Purchase Agreement) at 61 (Signature)); (iv) regularly holds out the ATS office in this district as an office of Astronics Corp.,

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    and vice versa (Ex. K (Business Search, California Secretary of State: Astronics

2    Test Systems Inc.) (ATS currently lists its address as the same as Astronics

3    Corporation with the California Secretary of State); Ex. L (Investor FAQs on

4    astronics.com) at 2 (the Astronics' website lists Astronics' corporate headquarters as

5    New York and then lists a series of other offices, including in this judicial district,

6    without identifying any subsidiary names); Ex. F (Amended and Restated Asset

7    Purchase Agreement) §10.3 (ATS identifies its notice address as the Astronics'

8    corporate headquarters in New York)); (v) maintains centralized accounting (Ex. A

9    (Astronics Corp. 2019 Form 10-K) at 29 ("consolidated balance sheets")); and (vi)

10   shares a webpage with ATS (Ex. E (Astronics Test Systems on astronics.com)).

11       16.    The unity of interest and ownership between Astronics Corporation and

12   ATS is further shown by statements made in a July 31, 2020 earnings conference

13   call presided over by Mr. Burney and Mr. Gundermann, the edited transcript of

14   which is attached as Exhibit M (Astronics Corp. Q2 2020 Earning Call) and audio of

15   which available at http://public.viavid.com/index.php?id=140405.  In the conference

16   call, Mr. Gundermann explained that one of the "highlights for the second quarter is

17   our Test business," which "actually had a really good quarter," and that "our

18   expectation is that we're going to have quite a bit of good news about our Test

19   business for the rest of this year. So we're happy to have that as part of our portfolio

20   these days."  *Id.* at 7.  He also explained how Astronics Corporation divides the

21   business into "different revenue streams" and that "[t]he Test side, in particular,

22   seems to be accelerating."  *Id.* at 10.  Later, Mr. Gundermann stated that "there's a

23   large number of programs all kind of coming in at once from our Test business'

24   various initiatives" representing "a whole surge of business in general that's been

25   feeding our current results."  *Id.* at 18.  He also noted that while "10%" of Astronics

26   Corporation's business traditionally has been ATS, "[w]ith Aerospace dropping and

27   Test growing, that could get up to 20% or more next year."  *Id.*  On information and

28

8

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  belief, a portion of those revenues obtained by ATS and ultimately flowing to

2  Astronics Corporation result from the conduct complained of herein.

3      17.    In light of the foregoing, injustice would result from declining to

4  exercise personal jurisdiction over Astronics Corporation, because it would allow

5  Astronics Corporation to evade responsibility for its activities that target California

6  while frustrating Teradyne's efforts to protect its rights.  Moreover, it would be

7  unfair to allow Astronics Corporation to exercise such close control over its

8  subsidiary ATS, on the one hand, while it simultaneously claims it does not control

9  ATS to escape liability.

10     18.    Venue in this district is appropriate under 28 U.S.C. §§ 1391(b),

11 1391(c) and/or 1400(a)-(b).  Defendants reside in this district as defined by 28

12 U.S.C. §§ 1391(c)(2), and a substantial part of the events giving rise to this dispute,

13 including copying, manufacturing, distribution, offers for sale, and sales of the

14 infringing products occurred in this district.  Defendants also "may be found" in this

15 district for purposes of Section 1400(a), as they maintain minimum contacts with

16 this district, at least through their business operations here.  In addition, on

17 information and belief, venue is proper under Section 1400(b) at least because

18 Defendants maintain a physical location in this district, owned or leased by

19 Defendants, that is their regular and established place of business.

20     19.    On information and belief, the right to relief asserted against each

21 Defendant in this First Amended Complaint arises out of the same transaction,

22 occurrence, or series of transactions or occurrences relating to the making, having

23 made, using, offering for sale, selling, and/or importing into the United States digital

24 test instruments that provide real-time over-voltage detection and protection that

25 incorporate or make use of one or more of the inventions covered by the Asserted

26 Patent, and software related to those digital test instruments.  Therefore, questions of

27 fact common to all Defendants will arise in this action and joinder of Defendants

28 under 35 U.S.C. § 299 is proper.

**FACTUAL BACKGROUND**

20.    Teradyne is a company that helps automate two of manufacturing's most critical elements: repetitive manual tasks and electronics testing.  As a world leader in electronics testing, Teradyne helps its clients and customers to accelerate innovation, lower production costs, and shorten time-to-market.

21.    For example, Teradyne is a leading supplier of electronics testing equipment used by the U.S. Military and other defense and aerospace manufacturers, depots, and intermediate-level facilities worldwide. Its products are key components of mission-critical automatic test systems programs, helping to provide standardization, performance, and readiness to its customers everywhere.

22.    Teradyne's engineers and developers have expended significant resources, creativity, time, and effort to develop the software for its electronics testing equipment, including proprietary application programming interfaces ("APIs") that provide its customers with the ability to write their own test programs that are compatible with and can interact with Teradyne's test equipment.  These proprietary APIs, which are crucial to Teradyne's competitive advantage in the industry and its developer productivity, include but are not limited to the M9-Series APIs,[1] the CShell APIs, and the DTB APIs.

23.    Each Teradyne proprietary API interfaces with a proprietary Dynamic Link Library ("DLL"), which is a library of code that implements the functions that are accessed via the API.

24.    Teradyne is the author of and owns all U.S. copyright rights in the following proprietary APIs (collectively, the "Teradyne APIs"), each of which has been registered with the United States Copyright Office:

- M9-Series Driver API 2.3 (U.S. Reg. No. TX 8-705-281),

- M9-Series Driver API 3.1 (U.S. Reg. No. TX 8-705-307),

---

[1] Later versions of the M9-Series Diagnostics API are called the CSi Diagnostics API.

FIRST AMENDED COMPLAINT

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

- CShell API 1.0 (U.S. Reg. No. TX 8-705-433),
- CShell API 3.3 (U.S. Reg. No. TX 8-705-347),
- DTB API 1.0.0.1 File Version 2 (U.S. Reg. No. TX 8-702-546),
- DTB API 1.0.0.1 File Version 18 (U.S. Reg. No. TX 8-702-552),
- M9-Series Diagnostics API 1.1 (U.S. Reg. No. TX 8-853-864),
- M9-Series Diagnostics API 2.0 (U.S. Reg. No. TX 8-854-869), and
- CSi Diagnostics API 6.0 (U.S. Reg. No. TX 8-854-736).

True and correct copies of the certificates for each of these registrations (or previews where the final certificates have not yet been received), all of which remain valid and subsisting, are attached hereto as Exhibit N.

25.     In addition, Teradyne is the author of and owns all U.S. copyright rights in the following proprietary DLLs (collectively, the "Teradyne DLLs"), each of which has been registered with the United States Copyright Office:

- M9-Series Driver 2.3 Dynamic Link Library (U.S. Reg. No. TX 8-851-955),
- M9-Series Driver 3.1 Dynamic Link Library (U.S. Reg. No. TX 8-851-966),
- CShell 1.0 Dynamic Link Library (U.S. Reg. No. TX 8-854-600),
- CShell 3.3 Dynamic Link Library (U.S. Reg. No. TX 8-851-991),
- DTB 1.0.0.1 File Version 2 Dynamic Link Library (U.S. Reg. No. TX 8-851-977),
- DTB 1.0.0.1 File Version 18 Dynamic Link Library (U.S. Reg. No. TX 8-851-986), and
- CSi Diagnostics v7.0 Dynamic Link Library (U.S. Reg. No. TX 8-851-958).

True and correct copies of the certificates for each of these registrations (or previews where the final certificates have not yet been received), all of which remain valid and subsisting, are attached hereto as Exhibit O.[2]

---

[2] In this First Amended Complaint, Teradyne has removed its allegations regarding Defendants' infringement of its copyright proprietary Di-Series Driver APIs and DLLs, but does so without prejudice to seek further amendment in the event it—

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

26.     Teradyne also has developed novel technologies and techniques related to automated electronics test systems, which are protected by numerous U.S. patents, including as discussed in greater detail below.  One such patent is U.S. Patent No. 7,395,479 ("the '479 Patent"), duly and legally issued on July 1, 2008 by the United States Patent and Trademark Office ("USPTO"), entitled "Over-Voltage Test For Automatic Test Equipment," and naming Tushar K. Gohel and Michael F. McGoldrick as inventors and Teradyne as assignee.  A true and correct copy of the '479 Patent is attached hereto as Exhibit P.

## DEFENDANTS' PXIe AND VXI SERIES PRODUCTS

27.     Defendants' automated test systems, instruments, and simulators include the PXIe and VXI series of digital test instruments.  Examples of the PXIe and VXI series of digital test instruments are depicted below.

during discovery or otherwise—uncovers additional specific evidence of such infringement.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

| PXIe-6943 | VXI Talon Model T940 |
|---|---|



28.     On information and belief, Defendants had access to the Teradyne APIs and Teradyne DLLs during development, marketing, sale, and/or support of the PXIe and VXI series of digital test instruments.  On information and belief, Defendants gained this access at least from (i) common customers including the U.S. Air Force and the U.S. Navy; (ii) former Teradyne employees, including John French, a design engineer familiar with Teradyne's test instruments and software, as well as David Early, Steve Fairbanks, Pat Griffin, and Gary Tilley, who were familiar with Teradyne's customers, products, and its sales and license practices; and/or (iii) two companies, EADS North America Test and Services ("EADS") and DME Corporation ("DME"), that had access to authorized Teradyne test equipment and software prior to their acquisition by Astronics Corporation.

29.    On information and belief, Defendants copied protectable, copyrighted expression from the Teradyne APIs and Teradyne DLLs, including software for Defendants' own PXIe and VXI series of digital test instruments, without authorization.

30.    Defendants' PXIe and VXI series of digital test instruments are adapted to run a test program that applies a specified data sequence to a "unit under test" ("UUT"), a product undergoing review to determine whether it is performing in accordance with certain specifications.

31.    On information and belief, Defendants' PXIe and VXI series of digital test instruments each include a plurality of signal connection points coupled to a plurality of channels.  The channels of Defendants' PXIe and VXI series of digital test instruments can be coupled to a UUT via electrical contact points and signals are received via the contact points.

32.    On information and belief, the channels in Defendants' PXIe and VXI series of digital test instruments provide real-time over-voltage detection and protection.  The channels in Defendants' PXIe and VXI series of digital test instruments include circuitry that compares the voltage of signals received from the UUT to reference (threshold) signals (V+ and/or V-) to detect over-voltage conditions.  An over-voltage indication is output if the circuitry detects an over-voltage condition, whereas a test result is output under normal operation conditions.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,395,479

33.    Teradyne incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

34.    Teradyne is the sole owner of all right, title, and interest in and to the '479 Patent.

35.    The '479 patent provides technological solutions to problems associated with fault detection systems in conventional automated test equipment.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

As the '479 patent specification explains, conventional automated test equipment systems typically identified faulty power connections or faulty outputs of a UUT by detecting so-called "stuck at one" or "stuck at zero" faults. Ex. P ('479 Patent) at 4:47-59. But while detecting such faults can indicate that the UUT is not operating properly or is not programmed correctly, "there is often no urgency in detecting such a fault" because "[c]ircuitry within the [UUT] and the test instrument are designed to process signals having values that represent a logical one or a logical zero" and thus "no damage to the system or test instrument necessarily results even if a particular line stays at logical one or logical zero for a long time." *Id*. at 4:59-5:4. An inadvertent over-voltage condition, on the other hand, in which the power output is too high for the UUT, could damage the device. *Id*. at 5:5-7. Thus, given the risk of damage to a UUT from an inadvertent over-voltage condition, especially given the high cost of such devices, there was a need in the automated testing space to detect such faults and allow for a disconnect or other correction of the situation.

36.     As described in the specification, the '479 patent addresses that very technological problem with claims directed to a technological improvement over prior automatic test systems. The '479 patent is directed to improved automated test equipment that, among other things, uses a novel and inventive circuit design to independently monitor the level of each of multiple signals from a UUT relative to both an expected level and to an over-voltage level. The patent is thereby directed to a specific improvement in the relevant technology. As the patent explains, "where a relatively high powered input is incorrectly provided to a low voltage digital device, damage to the device may occur." *Id*. at 5:5-7. Such damage "may occur relatively quickly in a catastrophic fashion." *Id*. at 5:7-8. "Even when damage does not occur suddenly in a catastrophic fashion, damage from application of an over-voltage may become manifest as a premature failure of interface 187 after the electronic system is put into operation." *Id*. at 5:10-14. Thus, it is critically important to detect "over-voltage" faults. Detection of over-voltage faults in

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

15

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

parallel with testing signals in the UUT against expected values—a process that was not well-understood, routine, or conventional at the time of the invention—beneficially allows quick disconnection from the UUT during testing to avoid damage by application of an over-voltage to the UUT. *Id*. at 5:8-10. And while some prior test instruments included protective circuitry, such circuitry merely isolated circuitry in the test instrument from an input and did not protect the UUT itself—as the unconventional invention of the '479 patent does. *Id*. at 1:54-61. Moreover, these prior test instruments did not utilize the novel over-voltage circuitry of the '479 patent.

37.     Defendants have had knowledge of the '479 Patent since at least February 28, 2014. In May 2009, Teradyne sent a letter to EADS, informing it of Teradyne's intellectual property rights, including the '479 Patent. The letter identified the '479 patent and provided its title, "Over-voltage test for automatic test equipment" and identified "the Talon Instruments™ T964," a product in the VXI series of digital test instruments and a predecessor to the closely-related PXIe series products, as a point of concern with respect to Teradyne's intellectual property rights. Dkt. 38-1. Defendants acquired EADS, including its assets and liabilities, on February 28, 2014. *See* Ex. Q (Astronics Corp. 2014 Annual Report) at 4, 16. Through this acquisition, EADS's knowledge of the '479 Patent was assumed by Defendants. On February 10, 2015, Teradyne sent a letter to Defendants reminding them of Teradyne's intellectual property rights, including the '479 Patent. Ex. R (2015 Notice Letters to Astronics) at 2-3. Teradyne sent a third letter on March 9, 2015, seeking acknowledgement from Defendants that they would respect Teradyne's intellectual property rights, including specifically with respect to the Talon Instruments™ line. *Id.* at 1.

38.     Defendants have infringed and continue to infringe, either literally or under the doctrine of equivalents, at least claims 1 and 9 of the '479 Patent in violation of 35 U.S.C. § 271(a), by making, having made, using, offering for sale,

selling, and/or importing into the United States, digital test instruments that provide real-time over-voltage detection and protection, including the PXIe and VXI series of digital test instruments (the "Infringing Products").

39.    As described below and shown in exemplary infringement claim charts attached as Exhibit S, publicly available product documentation shows that Defendants' Infringing Products practice each element of at least claims 1 and 9 of the '479 Patent.

40.    For example and without limitation, product documentation states that the Infringing Products are digital modules that can operate "automatically with software commands." Ex. T (Talon Instruments™ T940 Data Sheet) at 1; Ex. U (PXIe-6943 Data Sheet) at 1. The Infringing Products further include a channel circuit (*e.g.*, "CHANNEL CONTROL") having a signal connection point adapted to be coupled to a signal line of a unit under test to receive an input signal having a value (*e.g.*, "drive (CH DATA) and enable (CH EN) signals go to the Driver/Receiver logic … [t]he response … signals from the Receivers are examined [and] analyzed with respect to the input code"). Ex. V (User Manual, Talon Instruments™ Model T940) at 74, 79. These features of the Infringing Products relate to at least claim elements [1.pre], [9.pre], and [9.a] as shown by the exemplary infringement claim charts attached as Exhibit S.

41.    The Infringing Products further include sub-circuits that compare an input signal to a "Compare High (CVH) and Compare Low CVL," that use "comparator levels" to "allow the user to set" the CVH and CVL values, and that output a response high comparator result and a response low comparator result. Ex. V (User Manual, Talon Instruments™ Model T940) at 74-75, 140, 145, 374. The Infringing Products further include overvoltage circuitry that compares an input signal to V+ and V- to produce an overvoltage comparison signal. *Id.* at 225, 371, 374-375, 379; Ex. U (PXIe-6943 Data Sheet) at 2. On information and belief, the overvoltage circuitry in the Infringing Products includes comparison sub-circuits

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

(*e.g.*, dual optoisolator 112) which compare an input signal (*e.g.*, measurement at 144) to a threshold input signal (*e.g.*, voltage reference set by V+ and V- in combination with diodes 120-124 and 126-130) and outputs an overvoltage condition signal (*e.g.*, overvoltage signal 114).  Ex. W (Astronics '487 Patent) at Fig. 1, 2:15-17, 2:43-46, 3:65-4:9, 4:47-58.  These features of the Infringing Products relate to at least claim elements [1.a], [1.c], [9.pre], and [9.b] as shown by the exemplary infringement claim charts attached as Exhibit S.

42.     The Infringing Products further include a Digital Board (DB) logic and/or Control Logic which is coupled to the response high comparator result and the response low comparator result (test outputs) of the comparison sub-circuits, and which generates a test output from the comparator results of the comparison sub-circuits.  Ex. V (User Manual, Talon Instruments™ Model T940) at 74-75, 215, 374.  The Digital Board (DB) logic and/or Control Logic is further coupled to the overvoltage signal of the overvoltage comparison sub-circuits and generates an over-voltage output from the comparator results of the comparison sub-circuits.  *Id.* at 225, 374; Ex. W (Astronics '487 Patent), Fig. 1, 2:58-67, 4:47-58, 3:5-8.  These features of the Infringing Products relate to at least claim elements [1.b] and [9.c] as shown by the exemplary infringement claim charts attached as Exhibit S.

43.     Defendants' infringement of the '479 patent is confirmed in part by U.S. Patent No. 8,917,487, assigned to Defendant ATS ("Astronics '487 Patent") and attached as Exhibit W.  The Astronics '487 patent, which was filed many years after Teradyne's Asserted Patent, is titled "method and circuit for detecting and providing protection against an overvoltage condition" and describes and depicts circuitry for overvoltage detection and protection.  On information and belief, the overvoltage circuit disclosed in the Astronics '487 Patent is practiced by the Infringing Products.  The Astronics '487 Patent issued on December 23, 2014.  Product documentation from 2014 for the Infringing Products advertises "Robust protection circuitry," "Real-time over-voltage detection and protection on each

FIRST AMENDED COMPLAINT

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   channel," and "Overvoltage Shutdown," and describe the overvoltage shutdown

2   feature as "Patent Pending."  Ex. T (Talon Instruments™ T940 Data Sheet) at 2-3,

3   Fig. 1.  After the Astronics '487 patent issued, product documentation for the

4   Infringing Products was changed to describe the same overvoltage shutdown feature

5   as "Patented."  Ex. U (PXIe-6943 Data Sheet) at 2-3, Fig. 1.  In addition, the

6   Astronics website advertises "2014 – Patent, Overvoltage protection" on its

7   "Awards" page.  *See* Ex. X (Astronics Test Systems: Awards on astronics.com) at 1.

8   On information and belief, the Astronics '487 patent is the 2014 overvoltage

9   protection patent referenced on Defendants' website and the patent that corresponds

10  to Defendants' "Patented" overvoltage technology in the Infringing Products.  The

11  exemplary infringement claim charts attached as Exhibit S reflect that referenced

12  limitations of at least claims 1 and 9 would be met by practicing the Astronics '487

13  Patent.

14          44.    In addition to directly infringing the '479 patent, Defendants have

15  intentionally induced and continue to induce infringement of at least claims 1 and 9

16  of the '479 Patent in violation of 35 U.S.C. § 271(b) by actively and knowingly

17  inducing, directing, causing, and encouraging others, including but not limited to

18  customers and end users, to use the Infringing Products in the United States without

19  Teradyne's authorization or license by, among other things, providing instructions,

20  manuals, services, and technical assistance relating to the installation, set-up, use,

21  operation, and maintenance of the Infringing Products, with knowledge and specific

22  intention that such products will be used to infringe the '479 patent.

23          45.    Defendants' affirmative acts show that Defendants knew or were

24  willfully blind to their inducement of infringement by others, including but not

25  limited to: (1) advertising in public, and marketing features and benefits of, the

26  Infringing Products, including data sheets touting the Infringing Products' real-time

27  over-voltage detection and protection features; (2) promoting the adoption and use

28  of the Infringing Products and their real-time over-voltage detection and protection

1 features; and (3) providing instructions on how to use the Infringing Products,

2 including by supplying user manuals for the Infringing Products.

3     46.     For example, in a promotional data sheet for their PXIe-6943 50 MHz

4 Digital Test Instrument (the "Astronics PXIe-6943 Data Sheet"), a copy of which is

5 attached hereto as Exhibit U, Defendants promoted their "Overvoltage Shutdown"

6 features:



Figure 1: Built-in Protection

7
8
9
10
11
12
13
14
15
16

17     47.     Defendants took the above actions intending to cause infringing acts by

18 others.

19     48.     Defendants have had knowledge of the '479 Patent since at least

20 February 28, 2014, and have known that the actions of users of the Infringing

21 Products constitute infringement of at least claims 1 and 9 of the '479 Patent.

22 Moreover, the Complaint filed on March 23, 2020 by Teradyne and courtesy copy

23 provided to Astronics via a March 27, 2020 letter from John Wood to James Mulato

24 also informed Defendants that they were infringing the '479 Patent.

25     49.     On information and belief, Defendants have also had knowledge,

26 obtained through common customers, that the Infringing Products infringe

27 Teradyne's intellectual property, including the '479 Patent. Teradyne informed its

28 customers of the infringing nature of Defendants' Infringing Products, and on

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

FIRST AMENDED COMPLAINT

1  information and belief, that information was communicated to Defendants by such

2  common customers, including without limitation the U.S. Air Force, U.S. Navy, and

3  various government contractors working on, for example, the Global Minuteman

4  Automatic Test System (GMATS).

5     50.   Defendants also had knowledge of the '479 Patent and their

6  infringement thereof through certain sales representatives who worked for both

7  Teradyne and Defendants.  On information and belief, these representatives were

8  aware of the infringing nature of Defendants' PXIe and VXI series test instruments,

9  and yet sold them for use in place of Teradyne's test equipment at Defendants'

10  direction and with the encouragement of Defendants.  On information and belief,

11  information regarding the infringing nature of Defendants' activities was

12  communicated to Defendants by those sales representatives.

13     51.   At a minimum, these facts, coupled with the competitive relationship

14  between Teradyne and Defendants, show that Defendants were willfully blind to the

15  '479 Patent and their infringement thereof.

16     52.   Defendants have also contributorily infringed and continue to

17  contributorily infringe the '479 Patent in violation of 35 U.S.C. § 271(c) by offering

18  for sale and selling the Infringing Products in this judicial district and elsewhere in

19  the United States, knowing them to be especially made or especially adapted for

20  practicing at least claims 1 and 9 of the '479 Patent and not a staple article or

21  commodity of commerce suitable for substantial non-infringing use.  As described

22  in Paragraphs 38-43 and the claim charts attached as Exhibit S, publicly available

23  product documentation shows that Defendants' Infringing Products practice each

24  element of at least claims 1 and 9 of the '479 Patent.  On information and belief,

25  Defendants' customers using the Infringing Products infringe these claims when

26  using the Infringing Products in their ordinary course and in the manner intended by

27  Defendants, and the Infringing Products cannot be used in a substantial non-

28  infringing manner.  Defendants have and had knowledge of the '479 Patent and the

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

21

infringing nature of the Infringing Products; at a minimum, Defendants were willfully blind to the '479 Patent and that the Infringing Products are especially made or adapted for practicing at least claims 1 and 9 of the '479 Patent.

53. Defendants' acts of direct and indirect infringement are willful, as Defendants had actual knowledge of the '479 patent and their alleged infringement thereof at least as of February 28, 2014 (the date Astronics Corporation acquired DME) and knew, were willfully blind of, or should have known, that making, having made, using, offering to sell, selling, and/or importing into the United States the Infringing Products would infringe the '479 patent.  Less than a year later, on February 10, 2015, Teradyne sent a letter to Defendants reminding them of Teradyne's intellectual property rights, including the '479 Patent.  Ex. R (2015 Notice Letters to Astronics) at 2-3.  A month after that, Teradyne sent a follow-up letter on March 9, 2015, seeking acknowledgement from Defendants that they would respect Teradyne's intellectual property rights, including specifically with respect to the Talon Instruments™ line.  *Id.* at 1.  But Defendants ignored both letters, and continued to make, have made, use, offer to sell, sell, and/or import the Infringing Products.  Even after the March 2020 filing of the Complaint, Defendants' actions continue unabated.  Defendants' actions, given Teradyne's multiple letters, Teradyne's competitive relationship with Defendants, and Defendants' prior access to and copying of Teradyne's products, represent egregious conduct rising to the level of willful infringement.

54. As a result of Defendants' infringement, Teradyne has suffered and will continue to suffer damages.  Additionally, as a result of Defendants' infringement, Teradyne has suffered and will continue to suffer additional irreparable harm for which there is no adequate remedy at law.  For example and without limitation, Teradyne and Defendants are direct competitors in the automated testing space, and Defendants' continued infringement of the '479 Patent causes harm to Teradyne in the form of price erosion, loss of goodwill, loss of competitive position, loss of

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

market share, damage to reputation, loss of business opportunities, and direct and indirect unfair competition.  Monetary damages are insufficient to compensate Teradyne for these harms, and Teradyne is entitled to preliminary and/or permanent injunctive relief restraining Defendants, their officers, agents, employees, and all persons acting in concert with them from engaging in further acts of infringement as described herein.

55.     Defendants committed these acts of infringement without license or authorization from Teradyne.  On information and belief, none of these acts of patent infringement was performed with the authorization or consent of the United States Government or any agency thereof.

56.     Defendants will continue to infringe unless this Court enjoins Defendants and their agents, servants, employees, representatives, and all other acting in active concert with them from infringing the '479 patent.

57.     This case is an "exceptional" case within the meaning of 35 U.S.C. § 285, and Teradyne is entitled to an award of attorneys' fees.

## COUNT II
## COPYRIGHT INFRINGEMENT

58.     Teradyne incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

59.     Teradyne is, and at all relevant times has been, the author and owner of all U.S. copyright rights in each of the Teradyne APIs and the Teradyne DLLs (collectively, the "Teradyne Works"), each of which is an original work of authorship and comprises copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*

60.     Teradyne is the owner of all right, title, and interest to the U.S. registrations for each of the Teradyne Works, as set forth in paragraph 24-25 above and Exhibits N and O hereto.

FIRST AMENDED COMPLAINT

61.     As the exclusive owner of the Teradyne Works, Teradyne enjoys the exclusive right to, among other things, reproduce the Teradyne Works, prepare derivative works based upon the Teradyne Works, and distribute copies of the Teradyne Works.  17 U.S.C. §§ 101, 106.

62.     On information and belief, Defendants knew or were willfully blind to the fact that that each of the Teradyne Works was Teradyne's proprietary intellectual property, and that licenses, including the Teradyne Software License Agreement ("SLA"), were required to use those works.  Defendants obtained this knowledge through shared customers, their employees who formerly were Teradyne employees (including former Teradyne engineers and sales managers), and/or the two companies they acquired, EADS and DME.  As described in Paragraph 37, Teradyne sent letters to EADS and Astronics asserting that certain Teradyne software, including its CShell Library, was protected by copyright. *E.g.*, Ex. R (2015 Notice Letters to Astronics).  DME also received and agreed to the SLA. Ex. Y (DME Purchase Order and Terms) at 3, 9. Additionally, the SLA was posted on Teradyne's website, and therefore was publicly accessible. Ex. Z (SLA Template), available at https://www.teradyne.com/wp-content/uploads/2020/02/Software-License-Agreement_Teradyne-Defense-Aerospace.pdf.

63.     On information and belief, Defendants had access to each of the Teradyne Works, including through DME, EADS, and Teradyne's and Defendants' mutual clients, customers, and end users. For example, DME licensed the M9-Series Software License, which included the M9-Series, DTB, and CShell APIs.  Ex. Y (DME Purchase Order and Terms) at 3, 5.  Additionally, EADS had access to the M9-Series, CSi Diagnostics, DTB, and CShell APIs through its work on the USAF B-1B program.  DME and EADS also had access to the M9-Series, CSi Diagnostics, DTB, and CShell DLLs. Astronics also had access through former Teradyne employees, including John French, a design former design engineer familiar with

Teradyne's test instruments and software, including the M9-Series, CSi Diagnostics, CShell, and DTB APIs and DLLs.

64.     On information and belief, despite the fact that most or all of the relevant information is exclusively within the possession and control of Defendants, Defendants' own public statements and documentation, as well as reports from mutual customers, show that Defendants intentionally copied original, protectable expression in the Teradyne Works without authorization, including to develop and support their own Infringing Products, rendering software for those products identical or substantially similar to the Teradyne Works.

65.     For example and without limitation, in the Astronics PXIe-6943 Data Sheet, Defendants state that they offer the "PXIe-6943-TC-M9: TerM9 Library including Binary Reader," indicating that, on information and belief, in the software for the PXIe series of digital test instruments, Defendants have either entirely or partially copied, and thereby infringed, Teradyne's M9-Series APIs and Teradyne's M9-Series DLLs.  Ex. U at 6.

66.     The Astronics PXIe-6943 Data Sheet further states that it offers the "PXIe-6943-TC-DTB: Binary Reader for DTB and Diagnostic files," indicating that, on information and belief, in the software for the PXIe series of digital test instruments, Defendants have either entirely or partially copied, and thereby infringed, Teradyne's DTB APIs and Teradyne's DTB DLLs.  *Id.*

67.     A data sheet for the Talon Instruments T940 (the "Astronics VXI Data Sheet") states that the product includes the "M9 Series Code" and "C-Callable Legacy API," further indicating that, on information and belief, in the software for the VXI series of digital test instruments, Defendants have either entirely or partially copied, and thereby infringed, Teradyne's M9-Series, CSi Diagnostics, and CShell APIs, as well as Teradyne's corresponding DLLs.  Ex. T (Talon Instruments™ T940 Data Sheet) at 4.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

68.     Beyond Defendants' statements indicating that they have copied Teradyne's software, in the Astronics PXIe-6943 Data Sheet, Defendants also state the following:

Digital Functional Language (DFL)

The optional DFL provides a high-level programming interface to the PXIe-6943, providing seamless use of the PXIe-6943 with **legacy test programs**. This interface enables the PXIe-6943 to **emulate the legacy system characteristics without changing the underlying C program that executes the digital test**.

Ex. U at 3 (emphasis added).

69.     On information and belief, Defendants' claims about legacy system emulation and the legacy program compatibility of their PXIe-6943 product indicate that Defendants developed software that allows their test equipment to operate with customer test programs in the same manner as Teradyne's own test equipment. On information and belief, these claims indicate that the software for the PXIe series of digital test instruments either entirely or partially copies Teradyne's copyrighted M9-Series, CSi Diagnostics, DTB, and CShell APIs as well as their corresponding DLLs.  Defendants' full or partial copying of Teradyne's copyrighted M9-Series, CSi, DTB, and CShell APIs and their corresponding DLLs constitutes copyright infringement.

70.     For instance, to make Defendants' test equipment compatible with legacy test programs written for Teradyne's M9-Series Diagnostics API, on information and belief, Defendants' software for that equipment impermissibly copies that Teradyne API, including its header files, and its corresponding DLL.

71.     On information and belief, Defendants also impermissibly made copies of the Teradyne Works (including, for example, from copies licensed to DME and/or EADS) to develop their own test equipment and to write their own software, including the software interface for its test equipment.

72.     By their actions alleged above, on information and belief, and as Teradyne believes discovery will prove, Defendants have infringed, currently

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1 infringe, and will continue to infringe, Teradyne's copyright rights in each of the

2 Teradyne Works, including by creating, reproducing, and distributing the Infringing

3 Products.

4      73.    Defendants committed these acts of infringement without license or

5 authorization from Teradyne.  On information and belief, none of these acts of

6 copyright infringement was performed with the authorization or consent of the

7 United States Government or any agency or department thereof.

8      74.    On information and belief, Defendants' infringement is and has been

9 deliberate, willful, and in disregard of Teradyne's rights, and is and has been

10 committed for the purpose of commercial gain.

11      75.    Because of Defendants' unlawful activities, Teradyne has suffered and

12 will continue to suffer irreparable harm for which there is no adequate remedy at

13 law.  For example and without limitation, Teradyne and Defendants are direct

14 competitors in the automation testing space, and Defendants' continued

15 infringement of Teradyne's copyright rights in the Teradyne Works has caused and

16 is continuing to cause harm to Teradyne in the form of price erosion, loss of

17 goodwill, loss of competitive position, loss of market share, damage to reputation,

18 and loss of business opportunities.  In particular, on information and belief,

19 Defendants' infringement has led and will lead customers who already have

20 Teradyne test equipment to purchase Defendants' equipment instead of new

21 Teradyne equipment because Astronics' equipment works with customers' legacy

22 test programs (by copying Teradyne's software) and is available at a lower price

23 point (because Astronics did not need to incur the cost of independently developing

24 comparable equipment and/or software).  Accordingly, in addition to all other

25 remedies to which it is entitled, Teradyne is entitled to preliminary and/or

26 permanent injunctive relief restraining Defendants, their officers, agents, employees,

27 and all persons acting in concert with them from engaging in further acts of

28 copyright infringement as described herein.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

76.     Additionally, as a direct and proximate result of Defendants' copyright infringement, Teradyne has suffered and will continue to suffer monetary loss. Accordingly, Teradyne is also entitled to recover from Defendants the damages it has suffered and will continue to suffer as a result of Defendants' infringement in actual amounts to be proven at trial and including, but not limited to, any and all gains, profits, and advantages Defendants have obtained as a result of their infringement.  In the alternative, and where appropriate, Teradyne is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

## COUNT III
## INDUCING BREACH OF CONTRACT

77.     Teradyne incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

78.     Teradyne's customers purchased licenses to software from Teradyne ("Teradyne Software") pursuant to a Software License Agreement ("SLA") and agreed to be bound by those agreements.  Among other things, Teradyne's customers agreed that Teradyne Software is licensed only for use with Teradyne's systems and equipment, and not those of third parties such as Defendants.  Ex. Z (SLA Template) ¶1.  For example the SLA agreed to by DME, Ex. Y (DME Purchase Order and Terms) at 9 (¶1), stated that Teradyne Software was "for use only with the specific test system or equipment for which it is authorized by Teradyne," while the SLA agreed to by Anteon on behalf of the Air Force, Ex. AA (Anteon SLA) ¶1,[3] stated that Teradyne Software could be used "only with the specific system or systems for which it is authorized (designated by serial number or other designation acceptable to Teradyne)".

---

[3] Due to confidentiality concerns, Teradyne has omitted from the First Amended Complaint the purchase order and other confidential terms and documents from this agreement with Anteon.  However, it includes a copy of the Software License Agreement to which Anteon agreed.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

79.    On information and belief, Defendants knew of or were willfully blind to the existence of the SLA and had access to such knowledge at least through shared customers and Defendants' employees who were former Teradyne employees and familiar with Teradyne's sales and licensing practices, EADS, and/or DME. Through these shared customers and former Teradyne employees, Defendants also were aware of the SLA and its applicability to Teradyne Software.  On information and belief, Defendants were also aware of the contents of Teradyne's website, which included a publicly available copy of the SLA.  Ex. Z (SLA Template) ¶1. Defendants at all relevant times knew or were willfully blind to the fact that Teradyne's customers were bound by the SLA.

80.    Teradyne has performed all conditions, covenants, and promises required on its part to be performed in accordance with the SLA.

81.    Defendants intentionally caused Teradyne's customers, including but not limited to the U.S. Air Force and U.S. Navy, to breach their obligations under the SLA as alleged herein.  Defendants developed, marketed, sold, and supported test systems and/or equipment, including but not limited to Defendants' PXIe and VXI series products, that were designed and marketed in part to be compatible and used with Teradyne Software.  For example, Defendants designed their test systems and/or equipment to "emulate the legacy system characteristics without changing the underlying C program that executes the digital test" as described in the Astronics PXIe-6943 Data Sheet.  Ex. U at 3.  On information and belief, one customer workflow induced by Defendants involves the customer's unauthorized use of licensed Teradyne TPS Converter Studio software for test generation to target non-Teradyne equipment.  Some customer tests are in Teradyne's LSeries programming language, and must be converted into C code that, when executed, calls the Teradyne CShell API to interface with test equipment.  On information and belief, Defendants developed, marketed, sold, and supported replacement test equipment, including Defendants PXIe and VXI products, for use with customer tests that are

FIRST AMENDED COMPLAINT

converted using Teradyne's TPS Converter Studio, in violation of the SLA. On information and belief, in at least some instances the customer workflow induced by Defendants further involves the customer's unauthorized use of a licensed Teradyne CShell software component to target non-Teradyne equipment, in violation of the SLA, for test execution using an M9-Series driver replacement. Defendants marketed and sold their PXIe and VXI products to Teradyne's customers and supported their use with Teradyne Software in order to migrate Teradyne's customers away from Teradyne products.

82. On information and belief, Defendants accomplished this scheme by improperly using confidential and proprietary information and documents of Teradyne.

83. These independently wrongful acts caused Teradyne's customers to breach the SLA by using Teradyne Software with Defendants' test systems and/or equipment for which it has not been authorized by Teradyne.

84. As a proximate result of Defendants' conduct and the resulting breaches of the SLA by Teradyne's customers, Teradyne suffered damages in an amount to be proven at trial.

85. The aforementioned acts of Defendants were willful, oppressive, and malicious. Teradyne is therefore entitled to punitive damages in an amount to be proven at trial.

## COUNT IV
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

86. Teradyne incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

87. Teradyne's customers purchased licenses to Teradyne Software pursuant to a SLA and agreed to be bound by a SLA. *Supra* ¶ 78. Pursuant to these agreements, all of Teradyne's customers in the relevant time frame agreed that Teradyne Software is licensed only for use with Teradyne's systems and equipment,

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

FIRST AMENDED COMPLAINT

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

and not those of third parties such as Defendants  *See, e.g.*, Ex. Z (SLA Template) ¶1; Ex. Y (DME Purchase Order and Terms) at 9 (¶1); Ex. AA (Anteon SLA) at 11 (¶1).

88.     On information and belief, Defendants knew of or were willfully blind to the SLA and had access to such knowledge at least through shared customers and Defendants' employees who were former Teradyne employees familiar with Teradyne's sale and licensing practices, EADS, and/or DME.  Through these shared customers and former Teradyne employees, Defendants also were aware of the SLA and its applicability to Teradyne Software.  On information and belief, Defendants were also aware of the contents of Teradyne's website, which included a publicly available copy of the SLA.  Ex. Z (SLA Template) ¶1.  Defendants at all relevant times knew or were willfully blind to the fact that Teradyne's customers were bound by the SLA.

89.     Teradyne has performed all conditions, covenants, and promises required on its part to be performed in accordance with the SLA.

90.     Defendants intentionally caused Teradyne's customers, including but not limited to the U.S. Air Force and U.S. Navy, to breach their obligations under the SLA as alleged herein.  Defendants developed, marketed, sold, and supported test systems and/or equipment, including but not limited to Defendants' PXIe and VXI series products, that were designed and marketed in part to be compatible and used with Teradyne Software.  For example, Defendants designed their test systems and/or equipment to "emulate legacy system characteristics without changing the underlying C program that executes the digital test" as described in the Astronics PXIe-6943 Data Sheet.  Ex. U at 3.  On information and belief, one customer workflow intentionally caused by Defendants involves the customer's unauthorized use of licensed Teradyne TPS Converter Studio software for test generation to target non-Teradyne equipment.  Some customer tests are in Teradyne's LSeries programming language, and must be converted into C code that, when executed,

calls the Teradyne CShell API to interface with test equipment.  On information and belief, Defendants developed, marketed, sold, and supported replacement test equipment, including Defendants PXIe and VXI products, for use with customer tests that are converted using Teradyne's TPS Converter Studio, in violation of the SLA.  On information and belief, in at least some instances the customer workflow intentionally caused by Defendants further involves the customer's unauthorized use of a licensed Teradyne CShell software component to target non-Teradyne equipment, in violation of the SLA, for test execution using an M9-Series driver replacement.  Defendants marketed and sold their PXIe and VXI products to Teradyne's customers and supported their use with Teradyne Software in order to migrate Teradyne's customers away from Teradyne products.

91.     On information and belief, Defendants accomplished this scheme by improperly using confidential and proprietary information and documents of Teradyne.

92.     These independently wrongful acts caused Teradyne's customers to breach the SLA by using Teradyne Software with Defendants' test systems and/or equipment, actions which have not been authorized by Teradyne.

93.     As a proximate result of Defendants' conduct, and the resulting breaches of the SLA by Teradyne's customers, Teradyne suffered damages in an amount to be proven at trial.

94.     The aforementioned acts of Defendants were willful, oppressive, and malicious.  Teradyne is therefore entitled to punitive damages in an amount to be proven at trial.

## COUNT V
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

95.     Teradyne incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

96.     Teradyne had, and has, an expectancy in continuing and advantageous economic relationships with current and prospective purchasers and licensees of Teradyne electronics testing equipment, software, and support services.

97.     For example, Teradyne has longstanding relationships with the U.S. Army for the Global Minuteman Automatic Test System (GMATS).  These relationships held a probable future economic benefit and advantage to Teradyne in the form of profitable support services, software licenses, and sales of electronics testing equipment.

98.     Defendants knew of or were willfully blind to the existence of these relationships and the reliance of Teradyne's customers on Teradyne's hardware and software to create and support reliable test systems, including customers' development of legacy test programs through Teradyne's software.

99.     Defendants intentionally engaged in the independently wrongful conduct described above to interfere with and disrupt these relationships.  In particular, Defendants intentionally interfered with Teradyne's business relationships, including by inducing customers to breach their contracts by using Teradyne's software in a manner unauthorized by the SLA.  *E.g.*, *supra* ¶¶ 81, 90. Defendants' wrongful interference with Teradyne's current customer contracts also interfered with Teradyne's prospective economic advantage in continuing its relationships with those customers, including by interfering with Teradyne's opportunity to provide support services and maintenance for its current contracts and by interfering with Teradyne's opportunity to renew or enter new contracts with these customers.

100.     Defendants further engaged in a scheme to develop hardware and software that could replace Teradyne's products.  On information and belief, as part of this scheme and in order to analyze the capabilities and behavior of Teradyne's technology and to guide and measure Defendants' own progress in developing their products, Defendants accessed and used Teradyne's test equipment and software

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

licensed to Teradyne's customers without Teradyne's authorization and in violation of the SLA.  On information and belief, Defendants then sold their lower-cost test equipment and software to Teradyne's current and potential customers, causing both existing and potential customers to contract with Astronics instead of Teradyne for sales of or licenses to electronics testing equipment, software, and support services.

101.   On information and belief, Defendants also relied on confidential knowledge and insight gained from former Teradyne employees, including David Early, Steve Fairbanks, Pat Griffin, and Gary Tilley , who previously worked in Teradyne's Defense and Aerospace group and had intimate knowledge of Teradyne's customer relationships and its sales and license practices.  On information and belief, Defendants used this knowledge and insight to convert Teradyne's current and potential customers to Astronics' test equipment.

102.   On information and belief, Defendants also used Teradyne's confidential and proprietary information, obtained through Teradyne's customers and former Teradyne employees familiar with Teradyne's software, proprietary programming language, and proprietary data formats, in violation of their duties of confidentiality, to develop hardware and software that could operate with customer test programs in the same manner as Teradyne's own test equipment.

103.   As a result of Defendants' acts, these relationships actually have been disrupted, causing current and prospective customers to contract with Defendants instead of Teradyne for sales of or licenses to electronics testing equipment, software, and support services.  For example, Defendants—rather than Teradyne—were awarded the GMATS Technical Refresh, despite Teradyne's longstanding involvement and significant investment in developing, updating and supporting GMATS.

104.   As a proximate result of Defendants' conduct, Teradyne suffered damages in an amount to be proven at trial, including but not limited to loss of

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

profits from sales or licenses to current and potential customers of electronics testing equipment, software, and support services.

105.   Unless Defendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause Teradyne irreparable injury for which there is no adequate remedy at law.

106.   The aforementioned acts of Defendants were willful, oppressive, and malicious.  Teradyne is therefore entitled to punitive damages in an amount to be proven at trial.

## COUNT VII
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

107.   Teradyne incorporates by reference each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

108.   Defendants engaged in a successful campaign to take business from Teradyne by developing, marketing, selling, and supporting digital test instruments that were designed in part to emulate and be used with Teradyne Software.

109.   Defendants unlawfully interfered with Teradyne's relationship with future customers, including by relying on confidential information concerning Teradyne's customer relations and sales practices provided by former Teradyne employees.  Defendants used this information to target Teradyne's prospective economic relationships to prevent Teradyne from continuing to provide support and upgrade its customers existing test systems.

110.   Defendants also caused Teradyne's customers to breach the SLA with Teradyne as alleged herein, including by using the customers' existing, licensed copies of Teradyne's software in an unauthorized manner.  Defendants wrongfully used their own digital test instruments and Teradyne Software to induce further breach of contract by leading Teradyne's licensees to use Teradyne's software in an unauthorized manner.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

111.   Defendants also willfully and maliciously used Teradyne's confidential and proprietary information and documents to develop and support competing digital test instruments, including but not limited to Defendants' PXIe and VXI series products, to the benefit of Defendants and detriment of Teradyne as alleged herein.

112.   On information and belief, Defendants also engaged in fraudulent business acts by claiming to be able to run "legacy test programs" and "to emulate the legacy system characteristics"  Ex. U (PXIe-6943 Data Sheet) at 3 (emphasis added).  In fact, on information and belief, despite Defendants' copying of Teradyne's Works and despite their infringement of the '479 patent, Defendants' test equipment and software cannot perform the same functionalities as Teradyne's test equipment and software.  On information and belief, customers who relied on these representations, including for example the U.S. Marine Corps who contracted with Astronics for the General Purpose Automated Test System, instead found that Defendants had to repeatedly troubleshoot and continue to adapt their test equipment to effectively run certain "legacy test programs."

113.   These acts by Defendants constitute unlawful business practices and unfair competition prohibited under California Business and Professions Code Sections 17200 *et seq.*

114.   Defendants have benefited from these acts in the form of unfair advantages in developing, marketing, selling, and supporting digital test instruments, as evidenced by Defendants' success in obtaining contracts for the supply of competing products and services to Teradyne's current and prospective customers.

115.   As an additional result of such acts, Teradyne has suffered, and will continue to suffer, irreparable harm by Defendants' unlawful practices and unfair competition, including but not limited to its business reputation, goodwill, and

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

stature in the business community and with its customers, for which there is no adequate remedy at law, thereby justifying injunctive relief.

116.   Until relief is granted to Teradyne, Teradyne will be harmed and Defendants will be unjustly enriched, and such unjust enrichment should be disgorged pursuant to allowable remedies under California Business and Professions Code Sections 17200 *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Teradyne respectfully asks that the Court award judgment in favor of Teradyne and against Defendants and grant the following relief:

A.   A judgment that Defendants have infringed one or more claims of the '479 Patent pursuant to 35 U.S.C. § 271 and that Defendants are liable for damages caused by such infringement;

B.   A judgment that Defendants have infringed Teradyne's copyrights in and to the Teradyne Works;

C.   An injunction barring Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of patent infringement of any claim of the '479 Patent or infringement of Teradyne's copyrights in any of the Teradyne Works;

D.   An award of damages adequate to compensate Teradyne for Defendants' infringement of one or more claims of the '479 Patent, and in no event less than a reasonable royalty for Defendants' acts of infringement;

E.   An award of actual damages and profits for Defendants' copyright infringement pursuant to 17 U.S.C. § 504;

F.   An injunction barring Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns,

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  from inducing Teradyne's customers to breach their contractual obligations with
2  Teradyne;

3       G.    An injunction barring Defendants and their officers, directors, agents,
4  servants, employees, affiliates, attorneys, and all others acting in privity or in
5  concert with them, and their parents, subsidiaries, divisions, successors and assigns,
6  from selling, marketing, and supporting products for use with Teradyne software or
7  that were developed using Teradyne's confidential and proprietary information;

8       H.    An award of Defendants' profits from selling products and services for
9  use with Teradyne software or that were developed using Teradyne's confidential
10 and proprietary information;

11      I.    Disgorgement of any benefit, unjust enrichment, or monetary gains
12 stemming from Defendants' sale of products for use with Teradyne software or that
13 were developed using Teradyne's confidential and proprietary information;

14      J.    An award of Teradyne's lost profits from any lost sales or revenue
15 resulting from Defendants' interference with Teradyne's economic relationships;

16      K.    A judgment finding that this is an exceptional case and awarding to
17 Teradyne its reasonable attorneys' fees, disbursements, and costs in accordance with
18 at least 17 U.S.C. §§ 1203 and 35 U.S.C. § 285;

19      L.    Punitive damages in favor of Teradyne and against Defendants;

20      M.    Pre-judgment and post-judgment interest; and

21      N.    Such other and further relief as the Court deems just and proper.

22 Dated: August 21, 2020             Respectfully submitted,

23

24                         **ROPES & GRAY LLP**

25                         **DYKEMA GOSSETT LLP**

26                       By: _/s/ Brian H. Newman_
27                             Brian H. Newman
                            Attorneys for Plaintiff
                            TERADYNE, INC.

28

FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DYKEMA GOSSETT LLP**
**333 SOUTH GRAND AVENUE**
**SUITE 2100**
**LOS ANGELES, CALIFORNIA 90071**

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Teradyne demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: August 21, 2020                    Respectfully submitted,

**ROPES & GRAY LLP**

**DYKEMA GOSSETT LLP**


By: */s/ Brian H. Newman*
   Brian H. Newman
   Attorneys for Plaintiff
   TERADYNE, INC.

FIRST AMENDED COMPLAINT

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing FIRST AMENDED COMPLAINT was filed electronically on this 21st day of August, 2020, and therefore served electronically upon counsel of record.

By: /s/ Brian H. Newman

Brian H. Newman
Attorneys for Plaintiff
TERADYNE, INC.

FIRST AMENDED COMPLAINT

**DYKEMA GOSSETT LLP**
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071