UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-2713-GW-SHKx | Date | June 24, 2021 |
|---|---|---|---|
| Title | *Teradyne, Inc. v. Astronics Test Systems, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Abirami Gnanadesigan | Joshua L. Simmons |
| Christopher M. Bonny | Nicole Y. Stoddard |
| Stepan Starchenko | Yimeng Dou |
| Matthew J. Rizzolo | |
| Mark Horenstein | |

**PROCEEDINGS:** *MARKMAN* HEARING

Hearing is held by video teleconference.

The Court's Tentative Ruling on Claims Construction as per *Markman* Hearing is circulated and attached hereto. Matter stands submitted.

Court and counsel discuss scheduling. The parties are to file a joint scheduling report by close of business on June 25, 2021. The Court will issue an order or contact parties to discuss.

: 20

Initials of Preparer  JG

*Teradyne, Inc. v. Astronics Test Systems, Inc.*; Case No. 2:20-cv-02713 GW (SHKx)
Tentative Ruling on Claims Construction as per *Markman* Hearing

I. **Introduction**

Plaintiff Teradyne, Inc. ("Plaintiff" or "Teradyne") filed this action on March 23, 2020, alleging, *inter alia*, that Defendant Astronics Test Systems, Inc. ("Defendant" or "Astronics") infringes U.S. Patent No. 7,395,479 ("the '479 Patent"). *See generally* Complaint ¶¶ 26–43, Docket No. 1; First Amended Complaint ¶¶ 33–57, Docket No. 58. Now pending are some of the parties' claim construction disputes. The parties have submitted an Amended Joint Claim Construction and Prehearing Statement. *See* Docket No. 83. The parties have also filed various claim construction briefs and supporting documents:

- Plaintiff Teradyne's Opening Claim Construction Brief (Docket No. 87);
- Defendant Astronic's Responsive Claim Construction Brief (Docket No. 88);
- Plaintiff Teradyne's Reply Claim Construction Brief (Docket No. 91).

The Court construes the presented disputed terms as stated herein.

II. **Background**

For purposes of the parties' claim construction disputes, the parties request construction of terms in asserted claims of the '479 Patent, titled "Over-Voltage Test for Automatic Test Equipment." The '479 Patent issued on July 1, 2008. The '479 Patent relates to "electronic systems and more specifically to test systems." '479 Patent at 1:13–14.

Claim 1 of the '479 Patent recites:

1. Automatic test equipment adapted to execute a user program, the test equipment comprising a channel circuit having a signal connection point adapted to be coupled to a signal line of a unit under test to receive an input signal having a value, the channel circuit comprising:
   a) at least two comparison sub-circuits, each comparison sub-circuit having a signal input coupled to the signal connection point, a threshold input adapted to receive a threshold input signal having a value and a comparison output, and wherein each of the comparison sub-circuits is adapted to produce a comparison output signal at the comparison output having a value indicating the value of the input signal relative to the value of the threshold input signal; and
   b) control circuitry having at least two measured value inputs, each measured value input coupled to the comparison output of one of the at least two comparison sub-circuits, a test output and an over-

1

> voltage output, the control circuitry adapted to generate a test output from a first subset of the comparison output signals produced by the at least two comparison sub-circuits and to generate the over-voltage output from a second subset of the comparison output signals produced by the at least two comparison sub-circuits; and
>
> c) wherein the automatic test equipment is adapted to independently set the value of the threshold input signal for each of the at least two comparison sub-circuits based on the user program.

'479 Patent, Claim 1. Figure 2A, reproduced below, depicts "a circuit diagram of a portion of a digital test instrument according to one embodiment of the invention connected to a Unit Under Test (UUT):"



FIG. 2A

*Id.*, Fig. 2A, 2:62–64. Figure 2A depicts "digital channel **211**," "driver **210**," "resistor **260**," "line **215**," comparators **203**, **205**, **207**, **209**," "digital controls **201**" and "interface **187**." *See* '497 Patent at 5:47–7:42.

### III. Legal Standard

#### A. Claim Construction

Claim construction is an interpretive issue "exclusively within the province of the court."

2

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). It is "a question of law in the way that we treat document construction as a question of law," with subsidiary fact-finding reviewed for clear error to Fed. R. Civ. P. 52(a)(6). *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837-40 (2015). The claim language itself is the best guide to the meaning of a claim term. *See Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014). This is because the claims define the scope of the claimed invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). But a "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent." *Id.* at 1313. Thus, claims "must be read in view of the specification," which is "always highly relevant to the claim construction analysis." *Phillips*, 415 F.3d at 1315 (internal quotations omitted).

Although claims are read in light of the specification, limitations from the specification must not be imported into the claims. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323.

The prosecution history may lack the clarity of the specification, but it is "another established source of intrinsic evidence." *Vederi*, 744 F.3d at 1382. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citations omitted). "Furthermore, like the specification, the prosecution history was created by the patentee in attempting to explain and obtain the patent." *Id.* "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Claim construction usually involves resolving disputes about the "ordinary and customary meaning" that the words of the claim would have had "to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (internal quotations and citations omitted). But in some cases, claim terms will not be given their ordinary meaning because the specification defines the term to mean something else. "[A] claim term may be clearly redefined without an explicit statement of redefinition," so long as a person of skill in the art can ascertain the definition by a reading of the patent documents. *Id.* at 1320; *see*

3

*also Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016).

Where the patent itself does not make clear the meaning of a claim term, courts may look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including the prosecution history and "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (internal quotations omitted). Sometimes, the use of "technical words or phrases not commonly understood" may give rise to a factual dispute, the determination of which will precede the ultimate legal question of the significance of the facts to the construction "in the context of the specific patent claim under review." *Teva*, 135 S. Ct. at 841, 849. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.*

### B. Indefiniteness

A patent's specification must conclude "with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b); *see also* 35 U.S.C. § 112 ¶ 2 (2006). In order to meet this "definiteness" requirement, "a patent's claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc. ("Nautilus I")*, 572 U.S. 898, 910 (2014). The Supreme Court in *Nautilus I* emphasized that patents must be precise enough to afford clear notice of what is claimed, thereby "appris[ing] the public of what is still open to them," while recognizing that absolute precision is unobtainable given "the inherent limitations of language." *Id.* at 899, 910 (quoting *Markman*, 517 U.S. at 373).

General claim construction principles apply to indefiniteness challenges, but the burdens are slightly different. *See Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010) ("In the face of an allegation of indefiniteness, general principles of claim construction apply") (internal quotations and citations omitted). While courts construing claim language sit in relative equipoise, a patent is "presumed valid under 35 U.S.C. § 282." *Biosig Instruments, Inc.*

4

v. *Nautilus, Inc.* ("*Nautilus II*"), 783 F.3d 1374, 1377 (Fed. Cir. 2015). "[C]onsistent with that principle, a fact finder is instructed to evaluate . . . whether an invalidity defense has been proved by clear and convincing evidence." *Id.* (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011)) (emphasis added, brackets removed); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007) ("Because a patent is presumed to be valid, the evidentiary burden . . . is one of clear and convincing evidence.").

## IV. Discussion

### A. Disputed Claim Terms

1. Preamble (Claim 1)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Limiting | Not limiting |

Defendant does not oppose Plaintiff's construction that the preamble is limiting. Because the preamble contains the antecedent basis for several terms in the body of Claim 1, the Court construes the preamble to be limiting. *See In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019) ("We have repeatedly held a preamble limiting when it serves as antecedent basis for a term appearing in the body of a claim.").

2. "comparison output having a value" (Claims 1, 2)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "comparison output having an alphanumeric value" |

The parties dispute whether the "value" must be an "alphanumeric value." Defendant argues that the value must be "alphanumeric" because Claim 1 recites that the value "indicat[es] the value of the input signal *relative to* the value of the threshold input signal." *See* Docket No. 88 at 3 (emphasis in original). According to Defendant, "For a value to be *relative*, it must be something that can be compared and, thus, must be alphanumeric." *Id.* (emphasis in original). Defendant highlights the specification's use of the phrases "less than," "falls below," "exceeds," and "above or below" to describe the relative value, which it asserts "[o]nly an alphanumeric value would be capable of being compared in this way." *Id.* at 4 (citing '479 Patent at 6:30–32, 6:64–66, 7:7–18, 7:33–38). Defendant also argues that "courts have regularly construed the term 'value' to mean a numeric value." *Id.* (collecting cases). Citing its expert, Defendant further argues that "[a] [person of ordinary skill in the art ("POSA")] reading these claims would have

5

understood that the indication of the value of the input signal relative to the value of the threshold input signal – *e.g.*, **higher** or **lower** – would be represented in alphanumeric form, *e.g.*, as either letters or numbers." *Id*. at 5 (emphasis in original) (citing Docket No. 87-4 ¶¶ 58–59). Finally, Defendant cites to several dictionary definitions, which it asserts supports its construction. *Id*. (collecting definitions). Thus, Defendant asserts that its construction "is sufficient to capture the meaning of the term (*e.g.*, above or below, or binary 1 or 0), but also sufficiently narrow so that a POSA would understand the scope of the claim." *Id*. at 4.

According to Plaintiff, a plain reading of the claim language "explains *exactly* what the value indicates." Docket No. 87 at 6–7 (emphasis in original). Plaintiff asserts that the value can either be "a digital value, *e.g.*, high/low or positive/negative voltage," or "an analog value, *e.g.*, the magnitude of the voltage." *Id*. at 7. Plaintiff argues that Defendant's construction improperly excludes a preferred embodiment disclosed in the specification, *i.e.*, digital values such as "one of two voltage states." *Id*. at 7–9. Plaintiff also argues that Defendant cannot show that specification lexicographical defines the term "value" or disavowed the scope of the plain and ordinary meaning of the term. *Id*. at 8.

The Court agrees with Plaintiff that the term "value" is not limited to alphanumeric values. Claim 1 recites "a comparison output *signal* at the comparison output having a value…." '497 Patent, Claim 1 (emphasis added). Nothing in the intrinsic evidence requires the value of this signal to be any specific form, and Defendant has not shown that the '479 Patent clearly disavows any particular form of the term "value" as used in Claims 1 and 2. Defendant argues that Tusher Gohel, named inventor on the '479 Patent, admitted in his deposition that the term had no plain and ordinary meaning, but Mr. Gohel was only asked whether he had ever used the term "comparison output having a value" in a "technical context." *See* Docket No. 88-7 at 223:22–225:4. Further, although Defendant states that its construction includes values representing "above or below, or binary 1 or 0," Defendant also contradicts this assertion by stating that including "one of two voltage states … is not supported by either the claim language or the specification." Docket No. 88 at 4–5; *see also id*. at 6 (stating that Plaintiff "incorrectly asserts a value of positive or negative is an example of the first category when, as previously stated, these are not relative values as the claim requires"). Thus, according to Defendant, its construction of the "value indicating the value of the input signal relative to the value of the threshold input signal" would exclude positive and negative voltage levels representing binary

6

values to indicate whether the "input signal" is "higher or lower" than the "threshold input signal." The evidence does not support excluding this embodiment. Moreover, Defendant's expert's declaration only states that these values "can be represented either as characters or numbers," not that they must be. *See* Docket No. 87-4 ¶¶ 58–59. Finally, Defendant's cited court cases and dictionary definitions defining the term "value" in the abstract do not support a narrow construction, and at least one dictionary defines the term "value" as "[a]n amount regarded as a suitable equivalent for something else." *See* Docket No. 88-10.

Accordingly, the Court finds that no construction is necessary for the term "comparison output having a value."

3. "control circuitry" (Claims 1, 2, 4, 7, 8)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | "a field programmable gate array ('FPGA') or a similar microprocessor" |

The parties also dispute whether the term "control circuitry" is limited to "a field programmable gate array ('FPGA') or a similar microprocessor." As to the "control circuitry," the specification states:

> The control inputs to driver **210** are provided by digital controls 201. Digital controls **201** may be any suitable control circuit. In one embodiment, digital controls **201** are implemented as a field programmable gate array (FPGA). However, any suitable circuit may be used to implement digital controls **201**. Further, where an FPGA chip is used to implement digital controls **201**, one chip may contain circuitry to control more than one digital channel.

'479 Patent at 6:3–8. Despite the specification's disclosure that the "digital control **201**" may be "any suitable control circuit" and that an "FPGA" could be used for this circuit "in one embodiment," Defendant asserts that the "control circuitry" must be "a field programmable gate array ('FPGA') or a similar microprocessor." According to Defendant, the specification's disclosure that the control circuit must be "suitable" means that it must be an FPGA or a similar microprocessor because "other chips or large circuitry would not fit in the channel circuits of ATEs known to POSAs around 2004." Docket No. 88 at 8 (citing Docket No. 87-4 ¶ 69). Defendant also cites to a textbook, which shows "a figure of an ATE that performs 'voltage measure,' which is connected to a 'microprocessor'." *Id.* (citing Docket No. 88-11 at Fig. 1.1).

The Court is not convinced by Defendant's arguments. The specification clearly states that the use of an FPGA is only one embodiment. Defendant also offers no analysis for what

7

constitutes a "similar microprocessor," and the only support for this part of its construction is a textbook depicting an exemplary ATE. Further, Defendant and its expert provide no support for its assertion that an ATE would have size constraints of any kind at all. Defendant's attorney argument, Defendant's expert's conclusory testimony, and the extrinsic evidence are not enough to show a clear disavowal of the scope of the term "control circuitry," particularly in light of intrinsic evidence to the contrary.

Accordingly, the Court finds that no construction is necessary for the term "control circuitry."

4. "measured value input(s)" (Claims 1, 2)

| Plaintiff's Proposed Construction | Defendant' Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite; Alternatively, "voltage data input component(s)" |

Defendant asserts that the term "measured value input(s)" is indefinite for two reasons: (1) a POSA would not understand whether the term "input" is "an electrical signal or a physical component;" and (2) "assuming it is a physical component, a POSA would be confused as to whether the term refers to an input for receiving a 'measured value' or an input for receiving a 'comparison output signal.'" *See* Docket No. 88 at 10. Regarding its first argument, Defendant asserts that a plain reading of Claim 1 suggests the term can either indicate "that a 'measured value' is *put into* the control circuitry or it indicates a *physical component through which* a 'measured value' is put into the control circuitry." *Id*. at 11 (emphasis in original). Defendant argues that the specification does not discuss the "measured value input(s)" and uses the term "input" as both a signal and a physical component. *Id*. at 11–12. Regarding its second argument, Defendant argues, "To make sense of the claims' use of different terms, a POSA would have attempted to interpret 'measured value input' to refer to something other than simply the 'comparison output signal' that comes out of the comparison sub-circuit." *Id*. at 13. According to Defendant, the specification shows that the "measured value input" may either be the "comparison output signal" or the "TW control signal," as seen in annotated Figure 4 reproduced below:

8



*See id.*; '497 Patent, Fig 4 (annotated). Thus, Defendant argues, a POSA would not know if the "measured value input(s)" refer to the "comparison output signal" or the "TW control signal." *See id.* at 13–14.

Alternatively, Defendant argues that the Court should construe the term to mean "voltage data input component(s)." *See id.* at 16. Defendant argues that it must be a "component" as opposed to a "connection point" under the doctrine of claim differentiation given that the claims also recite "connection points." *See id.* Defendant also argues that it must be a "voltage data" input component because "What else could it be if not 'voltage data'?" *See id.* at 17 (citing Docket No. 87-4 ¶ 81).

The Court finds that the term is not indefinite. Addressing Defendant's first argument, the language of Claims 1 and 2 clearly distinguish between "signals" and "inputs," suggesting that the inputs are physical components rather than signals. *See* '497 Patent, Claim 1 (reciting "a threshold input adapted to receive a threshold input signal" and "a comparison output signal at the comparison output"). Further, the claim language states that the "at least two measured value inputs [are] coupled to the comparison output," suggesting that the "measured value input(s)" are structural rather than a signal. *See id.* Thus, despite the specification's use of the term "input" as a signal and a physical component interchangeably, Claims 1 and 2 clearly use the term as a physical component.

9

Addressing Defendant's second argument, Claim 1 recites "each of the comparison sub-circuits is adapted to produce a comparison output signal at the comparison output" and "at least two measured value inputs, each measured value input coupled to the comparison output of one of the at least two comparison sub-circuits." '487 Patent, Claim 1. A plain reading of these limitations suggests that the input signal for the "measured value input(s)" is the "comparison output signal." The use of the phrase "measured value" clearly refers to limitation "a comparison output signal … having a value indicating the value of the input signal relative to the value of the threshold input signal," *i.e.* a "measured value." Contrary to Defendant's assertion, the "TW control signal" is not the "measured value input," as the specification states that Figure 4 depicts "a simplified schematic of circuitry that may be included *in digital controls **201** of FIG. 2*." '497 Patent at 3:4–5 (emphasis added). Thus, the "TW control signal" is internal to the control circuitry, whereas the "FROM COMPARATOR [2003, 205, 207, and 209] are the "measured value input(s)."

The Court also declines to adopt Defendant's alternative construction. The term "measured value input(s)" is clear enough and Defendant offers no reason to further construe the term to add additional language not found in the intrinsic evidence. If the "measured value input" can only receive "voltage data," then there would be no issue; however, if there is some other form of signal that Defendant's construction would exclude, then Defendant has not shown why that signal should be excluded. Although the Court also finds that adding the word "component" to the term is unnecessary, the Court agrees with Defendant that the "input" is separate from the "connection point," as indicated by both the claim language and the specification. *See, e.g.*, '479 Patent at Claim1 ("a signal input coupled to the signal connection point"); 2:26–30 ("The automatic test equipment comprises a plurality of circuits, each of the circuits having *a signal input coupled to a respective one of the signal connection points* and adapted to receive as an input signal a signal at the signal connection point.") (emphasis added). But on the current record, the Court sees no reason to further construe the term "measured value input(s)."

Accordingly, the Court finds that the term "measured value input(s)" is not indefinite and that no construction is necessary.

5. "threshold outputs" (Claim 4)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite; Alternatively, "threshold data transmission component" |

Similar to its argument regarding the term "measured value input(s)," Defendant argues that the term "threshold outputs" is indefinite because a POSA would not understand whether the term "output" is a physical component or an electrical signal. See Docket No. 88 at 17. For the same reasons the term "measured value input(s)" is not indefinite, the Court finds that the term "threshold output" is not indefinite. Again, the claim language clearly distinguishes between signals and outputs, which suggests that the outputs are physical components. Further, Defendant's argument that the specification does not describe the "threshold output" goes more to whether the term has written description support under 35 U.S.C. § 112 ¶ 1 (2006) rather than whether the term is indefinite. See Docket No. 88 at 18.

Alternatively, Defendant argues that the Court should construe the term to mean "threshold data transmission component." See id. at 20. Defendant cites two dictionary definitions to argue that an "output" transmits data. See id. (citing Docket Nos. 88-8 at 778; 88-9 at 1503). Plaintiff argues that Defendant "is using the word 'transmission' narrowly to mean first generating and then sending a signal, but an 'output' may be a connection point, node, terminal, which merely carries a signal rather than generates it." Docket No. 87 at 20 (internal citations omitted). Defendant responds that "the alternative construction does not conflict with the transmission of the signal initiated and controlled by other parts of the control circuitry[,]" Docket No. 88 at 21. Plaintiff replies that this "undermines ATS's construction if that construction requires that the threshold output itself generate a signal, and renders its [sic] unnecessary if it does not." Docket No. 91 at 11.

The parties' dispute over the term "transmission" is not clear. Because Defendant's construction introduces unnecessary ambiguity that the Court is unable to resolve on the current record, the Court declines to adopt Defendant's construction. The term is clear and Defendant's added language will only further confuse the jury. Accordingly, the Court finds that the term "threshold outputs" is not indefinite and that no construction is necessary.

6. "low pass filter and/or delay element coupled between the over-voltage output and the comparison outputs of the two of the at least two comparison sub-circuits" (Claim 8)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite; Alternatively, "low pass filter" means "a filter having a single transmission band extending from zero to a finite cutoff frequency" |

Defendant argues that the phrase "low pass filter and/or delay element" is indefinite because the specification discloses that "[a] low pass filter *or* delay element is therefore desirable in circumstances where it is desirable not to trigger an alarm output when the voltage on line **215** momentarily exceeds a set level." *See* Docket No. 88 at 23 (quoting '479 Patent at 13:28–31) (emphasis in original). According to Defendant, the specification does not disclose the use of both a "low pass filter" and a "delay element," and a POSA would not understand how to use both a "low pass filter" and a "delay element" because "a 'low pass filter' is the same thing as a 'delay element.'" *See id.* (citing Docket No. 88-2 at 151:23–25; Docket No. 87-4 ¶¶ 52–53). Defendant also emphasizes that Plaintiff originally asserted that "and/or" meant "and" in the parties' Joint Claim Construction and Prehearing Statement, but now asserts that it means "and, or, or both." *See id.* at 22–23. Thus, Defendant argues, Plaintiff's "materially inconsistent positions" regarding the meaning of the term shows that it is indefinite. *See id.* (quoting *Infinity Comput. Prods., Inc. v. Oki Data Ams. Inc.*, 987 F.3d 1053, 1058–59 (Fed. Cir. 2021)).

Alternatively, Defendant argues that the term "low pass filter" means "a filter having a single transmission band extending from zero to a finite cutoff frequency." *See* Docket No. 88 at 24. Defendant cites to several dictionary definitions that it argues supports its construction. *See id.* at 24–25 (collecting definitions).

Plaintiff argues that the term "and/or" clearly means a low pass filter, a delay element, or both. *See* Docket No. 87 at 21. Plaintiff asserts that Defendant's arguments regarding the specification, specifically "whether there is a particular benefit or reason [described in the specification] to include" both a "low pass filter" and a "delay element," are "irrelevant." *See id.* at 23. Plaintiff also asserts that the term "low-pass filter" requires no further construction because the term should be given its plain and ordinary meaning. *See id.* Plaintiff argues that Defendant's construction "improperly narrow[s] the claim" by requiring "a single transmission band" and a "finite cutoff frequency." *See id.* According to Plaintiff, the cutoff frequency can be adjustable and thus may invoke several transmission bands, citing the specification's

12

disclosure of both a "digital low pass filter" and a low pass filter "implemented in whole or in part with analog signal processing techniques." *See id*. at 23–24 (quoting '497 Patent at 3:22–25).

The Court finds that the term "low pass filter and/or delay element" is not indefinite. There is no real dispute that the term "and/or" means a low pass filter, a delay element, or both. *See, e.g.*, *Cochlear Bone Anchored Solutions AB v. Oticon Medical AB*, 958 F.3d 1348, 1359-60 (Fed. Cir. 2020) ("Claim 10 recites a 'directivity means comprising at least one directivity dependent microphone and/*or* signal processing means in the electronic circuitry.' The use of the disjunctive creates three alternative subsets of claim coverage—a directivity dependent microphone only; signal processing means only; and a directivity dependent microphone together with signal processing means."). Defendant's arguments regarding the specification go more to whether the specification provides sufficient written description support or is sufficiently enabling under § 112 ¶ 1, not indefiniteness. Given that claim construction is not the proper stage to evaluate these arguments, the Court declines to do so. *See Idenix Pharms., Inc. v. Gilead Scis., Inc*., No. CV 13-1987-LPS, 2015 WL 9048010, at *4 (D. Del. Dec. 16, 2015) ("Generally, questions of validity such as inadequate written description or enablement are premature at the claim construction stage.") (citing *Hill-Rom Servs., Inc. v. Stryker Corp*., 755 F.3d 1367, 13 74 (Fed. Cir. 2014)). Further, even assuming the two components are the same thing, Defendant has not explained why the potential to include redundant components would somehow render the limitation indefinite. A POSA reading the limitation would still understand with reasonable certainty the scope of the term; whether a POSA would understand the utility of the limitation is another inquiry entirely.

The Court also declines to adopt Defendant's alternative construction. Defendant does not address Plaintiff's argument that the cutoff frequency can be adjustable at all, and nothing in the evidence supports excluding these embodiments.

Accordingly, the Court finds that the term "low pass filter and/or delay element coupled between the over-voltage output and the comparison outputs of the two of the at least two comparison sub-circuits" is not indefinite and that no construction is necessary.

## V.     Conclusion

For the reasons stated, the Court would construe the disputed terms as follows:

13

| Term | Asserted Claim(s) | Court's Construction |
|---|---|---|
| Preamble | Claim 1 | Limiting |
| "comparison output having a value" | Claims 1, 2 | No construction |
| "control circuitry" | Claims 1, 2, 4, 7, 8 | No construction |
| "measured value input(s) | Claims 1, 2 | No construction |
| "threshold outputs" | Claim 4 | No construction |
| "low pass filter and/or delay element coupled between the over-voltage output and the comparison outputs of the two of the at least two comparison sub-circuits " | Claim 8 | No construction |

14